## GILES COOK, appellant, v. GEORGE SCOTT, appellee.

### Appeal from Knox.

A plea amounting to the general issue is bad on special demurrer.

The province of the declaration is, to exhibit upon the record the grounds of the plaintiff's cause of action, as well for the purpose of notifying the defendant of the precise character of those grounds, as of regulating his own proofs. When it performs such office in such manner as to leave no doubt on the mind of the defendant, either as to the nature or origin of the plaintiff's claim, it ought not, on principle, to be adjudged bad.

Where a plea and replication involve a mixed question of law and fact, it is within the province of the jury to try the issue formed, under the instructions of the Court, if desired.

The Circuit Court may, in the exercise of a sound discretion, permit the verdict of the jury to be put into proper form before they are discharged.

Under the provisions of the Act entitled "An Act to exempt certain articles from Execution," in force March 4, 1843, as a general rule, it is the duty of the officer having an execution in his hands, before he proceeds to take or seize any of the personal property of the defendant in such execution, by a levy thereon, to notify such defendant of his having such execution in his hands, if practicable, and thereupon it is the right of such defendant to select such property as he desires to retain under the Act aforesaid, surrendering to the officer all of his other property, not thus selected or specifically exempt, for the satisfaction of such execution.

If a defendant, after notice from an officer having an execution against him, neglect or refuse to make a selection of property allowed him by statute, the officer may proceed to levy upon any of his property, not specifically exempt from execution and sell the same, regardless of any subsequent claim of such defendant to such property as having been selected by him. But if the defendant make his selection and notify the officer thereof, and the officer should then proceed to take or seize such property on execution, unless authorized to do so by the finding of appraisers summoned and sworn according to the statute, he thereby becomes a trespasser. This is the case anticipated by the third sections of the Act.

If an officer proceed to seize or take the defendant's property on execution, without giving the requisite notice, the defendant may make his selection, after the levy, of the very property levied on, (if it be such in quality and value, as before the levy he might have selected,) precisely as before the levy he could have done. But, in such case, he should, on notifying the officer, surrender or offer to surrender, a sufficient amount of other property to satisfy the execution; and if he neglects to surrender or offer so to do, the officer may proceed with the sale unless the aggregate of the property levied on and afterwards selected, and that still retained by the defendant and not specifically exempt from execution, does not exceed sixty dollars, in which case the officer will be liable to the penalty of the statute, if he sells such property. If, however, a defendant

aliens, conceals, or otherwise disposes of all his property, except such as he desires to select, for the purpose of delaying or hindering his creditors, he will not be entitled to the benefit of the statute.

If the property sought to be selected by the defendant be indivisible, and exceed in value sixty dollars, he cannot retain it by paying to the officer the excess.

TRESPASS in the Knox Circuit Court, at the June term 1844, before the Hon. Jesse B. Thomas and a jury, brought by the appellee against the appellant. Verdict for the plaintiff for $151·50.

The pleadings and evidence are sufficiently set forth in the Opinion of the Court.

*C. K. Harvey*, for the appellant.

*J. Manning*, for the appellee.

The Opinion of the Court was delivered by

THOMAS, J. This was an action of *trespass* brought by the appellee against the appellant, under the statute for the illegal sale by him, as a constable, of certain property of the appellee on execution. The declaration contains three counts.

The *first* alleges that the defendant, Cook, being a constable, on the 19th day of April, 1844, by virtue of a certain execution, which the said defendant then and there had as constable as aforesaid, in favor of Alexander Ewing and against the said plaintiff, for the sum of thirty five dollars debt, and eight dollars costs, with interest from, &c., issued by John Jackson, one of the justices of the peace in and for the said county and State, and having competent jurisdiction and authority to issue the same, levied upon a certain brown mare, the property of the plaintiff, of, but not exceeding the value of sixty dollars; and on the 10th day of May following, by virtue of the same execution, sold the same mare; that the plaintiff, on and from the said 19th day of April to the said 10th day of May, was the head of a family, and residing with the same: that he selected the said property, as suited to his condition and occupation, and claimed the same as exempt from levy and sale on execution by the laws of this State;

that the same was suited to his condition and occupation, and "of all which the defendant had notice, on the 20th day of April, 1844."

The *second* is like the first, except that it sets out a different execution.

The *third* count is like the first, except in this, that it sets out as well the execution described in the second, as that in the first count.

The declaration concludes as follows, to wit: "By means of the premises, and by force of the statute in such case made and provided, the said plaintiff hath become entitled to recover of the said defendant three times the value of the said property so illegally taken by the said defendant as aforesaid. And the said plaintiff avers, that the said property was of the value of sixty dollars. And the wrongs aforesaid to the said plaintiff, the said defendant then and there did and against the peace and dignity of the people of the State of Illinois, to the damages," &c.

The defendant pleaded,

*First.* The general issue, and thereon was issue;

*Second.* That the said mare was worth more than sixty dollars, on the day of levy;

*Third* and *Fourth.* That after levy and before sale, the said brown mare was appraised by two disinterested householders, summoned by the defendant and sworn by a justice of the peace, at sixty five dollars;

*Fifth.* That the plaintiff was not, at the time of the levy, the head of a family, residing with the same;

*Sixth.* That before the said levy, the plaintiff had conveyed the said mare, by way of mortgage to one Adam Wilhelm;

*Seventh.* That before the date of the said levy, the plaintiff had sold and delivered all of his other property except the said mare, to defraud his creditors;

*Eighth.* That after the plaintiff had notice that an execution was in the hands of the defendant, against the said plaintiff, to wit, the said execution in favor of the said Alexander Ewing, the said plaintiff neglected to select and claim the said property, and give notice of such claim to the defendant

for a reasonable time, after the notice of the said execution, to wit, for the space of two days.

Pleas three, four, and seven were traversed, and thereon issue was joined.

To the remaining pleas, two, five, six and eight, special demurrers were severally interposed, assigning among other causes of demurrer, that said pleas respectively amounted to the general issue; and these demurrers, being joined, were sustained by the Court.

To try the issues joined, on the first plea and on the replications to the third, fourth and seventh pleas, a jury was impanneled, who returned a verdict in the words and figures following, to wit: "We, the jury, find that Jackson was not a disinterested appraiser, and we find for the plaintiff $151·50," which was by the Court reduced to form, as follows: "We, the jury, find the defendant guilty, and assess the plaintiff's damages at $151·50," to which amendment the jury assented.

The defendant, by his counsel, moved the Court for a new trial, on the following grounds, to wit:

*First.* That the verdict was against the evidence;

*Second.* That it was against the law;

*Third.* That it was contrary to the instructions of the Court;

*Fourth.* That improper matter was left to the consideration of the jury.

The motion was overruled by the Court, and the defendant thereupon excepts to the opinion of the Court. Judgment was entered upon the said verdict, and therefrom the defendant appeals.

On the trial in the Court below, two executions, corresponding in description with those described in the declaration, were read in evidence to the jury, with an indorsement thereon by the defendant, showing them to have come into his hands on the 19th day of April, 1844, and to have been by him on the same day levied on the mare in question, and that said mare was afterwards, on the 10th day of May, 1844, after notice given, sold by him at public sale for the sum of $50·50.

The plaintiff then proved that the said executions were issued, the one by John Jackson, and the other by Daniel. Robinson, as justices of the peace in and for said county, and that they were given to the said defendant, who was a constable of said county, for execution; and then read in evidence from the dockets of the said justices, the judgments on which said executions were respectively issued. The plaintiff also proved by the said John Jackson and one George A. Charles, that they, the said Jackson and Charles were, after the levy and before the sale, summoned by the said defendant to appraise said mare; and that they did appraise her, as the witness Jackson swore, at sixty five dollars, but as the witness Charles swears that he thinks, at sixty dollars. The said appraisement was not reduced to writing; was made in the absence of the plaintiff, without his knowledge, and when it did not appear that there was any disagreement between the said parties as to the value of the said mare. The said Charles swore that he did not know of the object of such appraisement, and for anything that he knew, it might have been of an estray. There was no evidence to show that the plaintiff knew of the said executions.

The plaintiff further proved by one Booker Pickrell, that he, the said witness, as the agent of the plaintiff and in his behalf, had on two occasions, after the levy and before the sale, stated to the defendant, that the plaintiff had selected said mare as property exempt from execution, stating to defendant that he was authorized to do so; that on the day of, but before the sale, and at the time of making the last demand, he, witness, inquired of defendant what the said mare had been appraised at, but defendant refused to tell him; that the witness then offered to pay the said defendant any excess that the said mare had been appraised at over sixty dollars, for the use of the plaintiff, and to be credited on the executions, &c., which·defendant refused to receive.

It was also proved that the plaintiff was the head of a family and resided with the same on the 19th day of April, 1844, that he was a farmer by occupation, had a family, was a poor man, and had in his possession a wagon, a cow, and four or

five head of sheep, which was all the property that he was known to possess; that he was absent about a week; was at Peru working as a deck hand on board of a steam boat on the 4th day of May, but was at home eight or ten days after the levy and on the day of sale.

The witness, John Jackson, having, on cross examination by the defendant's attorney, stated facts tending to show his own interest in the event of this suit, the Court thereupon permitted the question of his, the said Jackson's disinterestedness as an appraiser, to go to the jury for settlement.

The foregoing is an epitome of all the material facts in the case, as eviscerated from the great mass of testimony heard on the trial and preserved in the bill of exceptions.

The appellant now assigns seventeen errors alleged to exist in the proceedings of the Circuit Court; but it is deemed unnecessary to incumber the record with their repetition. Such of them as are considered at all worthy of notice will be examined and disposed of, but not in the order in which they are presented to us.

The points made by the assignment of errors calling for investigation are, that the Circuit Court erred,

I.   In sustaining the demurrers to defendant's pleas, two five, six and eight;

II.   In not sustaining said demurrer to plaintiff's declaration;

III.   In leaving to the jury the determination of the question, whether or not John Jackson was a disinterested appraiser;

IV.   In directing the verdict of the jury to be put into form, and

V.   In overruling defendant's motion for a new trial.

I proceed to consider of these points in their order.

Then I.   As to the opinion of the Court upon the demurrer to the defendant's pleas.   There was not, therein, any error, as each of said pleas did amount to the general issue, and for that reason, without looking into any of the other grounds of demurrer assigned by plaintiff, they were properly adjudged bad.

II.   In discussing the question of the sufficiency of the de-
claration, it becomes necessary to notice particularly the ob-
jections urged to it by the appellant's counsel.   They are,

*First.*   That the said declaration contains no averment that
the said plaintiff selected and claimed the said mare, as pro-
perty exempt from execution, and gave notice of such selection
and claim to the said defendant, at or before the same was
taken by virtue of the said execution from the possession, of
the said plaintiff.

*Second.*   That said declaration does not describe any judg-
ments, on which the executions set out could legally issue;
nor show jurisdiction in the justice issuing the said executions,
of the subject matter; and

*Third.*   That there is no averment in the said declaration,
that the defendant did the acts therein complained of against
the form of any statute, or statutes.

The first of these objections is not well taken, for, as will
be presently shown, the selection of the property need not,
in all cases, for the purpose of making the officer liable, be
made before levy.

Nor is the second objection valid.   It is true that a minis-
terial officer is not protected, in an action of trespass, by the
execution issuing from an inferior Court, and under which he
has taken the property, unless such execution, on its face,
show regularity and jurisdiction in the Court; but that doc-
trine has no application to cases like this.   The executions
are not used in this case as a shield of protection for the offi-
cer, but as a weapon of assault upon him.   It is admitted that
he is liable to this action for seizing property exempt from
execution, upon a lawful writ, while, if the writ is void for
want of jurisdiction apparent on its face, in the officer issuing
it, it is said he is not liable; but the force of the reasoning in
support of that position, I cannot perceive.

It would seem to me, that the officer executing a writ,
which he knew to be void, by the taking of property exempt
from execution, should not be permitted to escape with lighter
punishment, than would be inflicted on him, if such writ had
been, in all respects, regular.   The law certainly does not

intend to make the officer executing a lawful writ liable to the payment of heavier damages, than if such writ had been, to all intents and purposes, legal, he would be.

The third and last ground of assault upon the declaration, although fortified by several authorities, we, nevertheless, still consider untenable.

The province of the declaration is to exhibit, upon the records, the grounds of the plaintiff's cause of action, as well for the purpose of notifying the defendant of the precise character of those grounds, as of regulating his own proofs. When it performs such office, in such manner as to leave no doubt on the mind of the defendant, either as to the nature or origin of the plaintiff's claim, it ought not, on principle, to be adjudged bad.

Could a plaintiff, in any case, derive his right to sue under a statute, more clearly or certainly by concluding his declaration *"contra formam statuti,"* than is done by the conclusion of the declaration in this case, to wit: "By means of the premises and by force of the statute in such case made and provided, the said plaintiff hath become entitled to recover of the said defendant three times the value of the said property so illegally taken," &c.? That the defendant was apprised that the plaintiff sued upon a statute is apparent from the fact, that, as the record shows, he justified under the very Act under which this suit was instituted. Then why should this judgment, although in a penal action rendered, be reversed for such supposed defect, particularly when, as it is admitted, the attention of the Circuit Court was not even called to it, either through design, or because the counsel for the defendant, who also represents him in this Court, had no confidence in such objection, or did not know of its existence.

To reverse the judgment for such cause, if all the plaintiff's testimony first heard could be made available on the second trial of the cause, would not benefit the defendant, as, after the amendment of his declaration, his means of defence would not be thereby enlarged, or in any wise altered. But, on the other hand, it might perpetrate the greatest injustice to the plaintiff, if injustice could in any case by done by defeating

a judgment for a penalty, as, on the first trial in the Circuit Court, he might establish his right to recover the penalty given by statute, by incontestibly proving the violation thereof by the defendant; but when remanded for a second trial, he might by reason of the death or absence of his witness, or witnesses, be unable to make out his case, and the aggressor thus be permitted to go unpunished for his misconduct.

III.   The question of the disinterestedness of John Jackson, as an appraiser, was put directly in issue by the plaintiff's replication to the third and fourth pleas, and although a mixed question of law and fact, it was, nevertheless, the province of the jury to try that issue thus formed, under the instruction of the Court, if called for.

IV.   The Circuit Court usurped no improper authority in ordering and permitting the verdict into proper form before the jury had been discharged, and then re-found by them. This is a power which the Circuit Court may, in its sound discretion, always exercise.

V.   The only remaining point to be disposed of is, the alleged error of the Circuit Court in overruling defendant's motion for a new trial.   To settle that point, requires a construction of the law entitled " *An Act to exempt certain articles from execution,*" in force March 4, 1843.   Laws of 1842, p. p. 121, 142.

The second section of the law, after enacting "that the following property, when owned by any person being the head of a family, and residing with the same, shall be exempt from levy and sale on execution," &c., goes on to enumerate, specifically, various articles of property, and then adds, "and sixty dollars worth of property suitable to his or her condition or occupation in life, to be selected by the debtor," &c.

The third section is as follows, to wit: "If any officer by virtue of any execution or other process, or any other person, by any right of distress, shall take or seize any of the articles of property, herein before exempted from levy and sale, such officer, or person, shall be liable to the party injured for three times the value of the property taken or seized, to be recovered by action of trespass with costs of suit."

Cook *v.* Scott.

The question to be determined in the exposition of this law is, what are the rights and privileges intended to be given and secured by it; and how, and under what circumstances, may the penalty provided for the infraction of such rights and privileges be incurred? The end intended to be accomplished through the agency of this law is, to protect from levy and sale on execution, property of a certain quality and value, to be selected by the debtor. But when must that selection be made? Why, manifestly, as a general rule, before the levy on such property. Then, in order that the exercise of such right by the debtor may not in any case be defeated, it is the duty of the officer having an execution in his hands, before he proceeds to take or seize any of the personal property of the defendant in such execution, by a levy thereon, to notify such defendant of his having such execution in his hands, if practicable; and thereupon it is the right of such defendant to select such property as he desires to retain, according to the statute, surrendering to the officer all of his other property not thus selected, or specifically exempt, in order that, by the sale thereof, or of so much of it, as may for that purpose be necessary, the money due on the execution may be made.

If the defendant, being thus notified, or otherwise being apprised of the execution against him in the hands of the constable, and of the intended levy, neglect or refuse to make such selection, the officer may at once proceed to levy upon any of the property of such defendant, not specifically exempt from execution, that he may choose to take, and afterwards proceed to sell the same, regardless of any subsequent claim or demand by such defendant of such property, as having been selected by him under this statute.

But if the defendant in the execution make his selection and notify the officer thereof, and the said officer afterwards proceed to take or seize any article of property thus selected, on said execution, unless when authorized to do so by the finding of appraisers summoned and sworn according to the fifth section of this same Act, he thereby becomes a trespasser; and this is the case usually supposed to occur of a "ta-

king or seizing," referred to in the third section. But is this the only class of cases, in which the officer may incur this penalty, as insisted by the appellant's counsel? I think not. Such a construction of this law would, in my estimation, enable the officer to evade, or defeat its intended operation, and although a penal statute, and therefore to be construed strictly, still the exposition given to it should not be so strict as to effect any such result.

Then if an officer proceed to seize or take the defendant's property on execution, without giving the requisite notice, he cannot thus, by his own neglect of duty, make the condition of the defendant any worse than it would have been before such levy, had the defendant been apprised that it was about to be made. In such case, therefore, the defendant has the privilege according to the true intent and meaning of this Act, to make his selection, after the levy, of the very property taken on execution, if it be such in quality and value, as before the levy he might have selected, precisely as before such levy, he could have done. He should, consequently, where he notifies the officer by whom the levy has been made, that he selects the property levied on, as exempt from execution under this statute, surrender, or offer to surrender, to such officer for the satisfaction of such execution, all such other property as he may own, not also selected by him as a part of the sixty dollars' worth, which he is authorized to retain, nor otherwise exempt by law from execution, or so much thereof as may suffice to pay the amount to be made on such execution. If such surrender, or offer to surrender be not made by the defendant, when notified of the execution against him, he is not entitled to a return of the property taken on execution, and the officer may lawfully proceed with the sale thereof, unless it appear that the aggregate value of the property thus levied upon, and afterwards selected, and that still retained by the defendant and not specifically exempt from execution, does not exceed sixty dollars; in which case the officer will be liable for selling such property, although such surrender, or offer to surrender the property not levied on be not made; for, before

levy, the defendant might have selected as well the property levied upon, as that left in his possession. If, however, a defendant has aliened, or concealed, or otherwise disposed of all his property except such as he desires to select, for the purpose of defrauding, delaying, or hindering his creditor in the collection of his debts, he will not be entitled to the benefit of this law, for the protection of the property thus retained by him. Nor can he, if the property sought to be selected by him be indivisible, and exceed in value sixty dollars, by paying to the officer on the execution the excess over that sum, entitle himself to retain such property as exempt from execution, as the law would adjudge it not suitable to the condition or occupation in life of such defendant.

If the aggregate value of the property owned by any person, exclusive of the property specifically exempt from execution, do not exceed sixty dollars, and such person be entitled, according to the rules hereinbefore settled for regulating the rights of debtors under this statute, to select such property and hold it exempt from execution; then such person will be considered as having thus selected such property as against any officer or other person who may seize or take such property, or any of it, by virtue of execution or other process, without first notifying such owner of property of the existence of such execution, or other precept, in the hands of such officer, or other person against him, unless, by the act of such debtor, the giving of such notice be rendered impracticable.

In this case, although we see much to reprobate in the conduct of the defendant, as an officer, in the stealthy manner of levying the execution in his hands, summoning appraisers, and conducting his other proceedings, showing manifestly a disposition on his part, to deprive the plaintiff of the benefits of the law under which this suit was instituted, we are still bound to say, that inasmuch as the plaintiff was proved to be in possession of other property not specifically exempt from execution, and did not surrender or offer to surrender it to the defendant on the execution in his hands, the property levied on being itself worth sixty dollars, the defendant was not liable for proceeding with the sale.

There is, moreover, some doubt whether the defendant was, as an officer, bound to recognize Pickrell, by whom the selection and demand of the property were made, as the plaintiff's agent. I am inclined to think that no sufficient evidence of such agency was exhibited to the officer, as to require him to surrender the property levied upon to the said professed agent, at the risk of subjecting himself to actions at the suit of the plaintiff in execution for neglecting to make the money thereon.

For these reasons, the motion for a new trial should have been allowed, although no reason is perceived why the verdict of the jury should have been disturbed, on account of any thing connected with the appraisement of the property by Jackson and Charles.

The judgment of the Circuit Court is reversed with costs, and the cause remanded for further proceedings not inconsistent with this Opinion.

*Judgment reversed.*